UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

METROPOLITAN LIFE
INSURANCE COMPANY,

    *Plaintiff*,

v.

DAVID SUTHERLIN,
MELVINER BAILEY
and ROMONA RANKIN,

    *Defendants*.
_____/

CASE NO. 1:21-cv-11609
DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT,
LEAVE TO DEPOSIT INTERPLEADER FUNDS,
AND FOR DISMISSAL WITH PREJUDICE (ECF No. 16)**

I. **RECOMMENDATION**

For following reasons, **I RECOMMEND** that Plaintiff's motion (ECF No. 16) be **GRANTED IN PART** as to Plaintiff's request for leave to deposit funds, and for dismissal with prejudice but **DENIED** as to the request for default judgment against Bailey and Rankin.  (ECF No. 16).

II. **REPORT**

    A. **Background**

1

The decedent, Frizzell Sutherlin, participated in a life insurance program through his employer, General Motors.[1] (*Id.*) When Frizzell died in February 2020, he had named his former caretaker, Melviner Bailey, as his sole beneficiary. (*Id.*; ECF No. 1-3, PageID.55; ECF No. 1-10, PageID.74.) After the proceeds from Frizzell's plan were used to pay for his funeral expenses, Bailey claimed the remaining funds, totaling $3,243.96. (ECF No. 1, PageID.5–6.) However, Frizzell's last surviving son, David Sutherlin, contested Bailey's claim, arguing that Frizzell had begun to suffer from dementia at the time he named Bailey as his beneficiary. (*Id.*) If Frizzell did not validly name Bailey as his beneficiary, then Frizzell's surviving children would be entitled to the proceeds from his life insurance policy. (ECF No. 1-18, PageID.111.) David later sent Plaintiff copies of Frizzell's medical records which confirmed that Frizzell had suffered from dementia when he named Bailey as his beneficiary. (ECF No. 1, PageID.5–6; ECF No. 1-3, PageID.55; ECF No. 1-13, PageID.84, 86.)

The medical records also revealed that Frizzell had an unnamed daughter. (ECF No. 1-13, PageID.87.) Plaintiff alleges that this statement in Frizzell's medical records is corroborated by his obituary which lists a woman named Romona Rankin as a "possible child . . . ." (ECF No. 1, PageID.7.) However, David Sutherland completed an affidavit stating that Frizzell had only two sons, one of whom was deceased. (ECF No. 1-14,

---

[1] This plan was governed by the Employment Retirement Income Security Act ("ERISA"). (ECF No. 1, PageID.3.) Frizzell's life insurance plan was "funded by a group life insurance policy issued by" Plaintiff, Metropolitan Life Insurance Company. *Id.*

PageID.90.)   Further, Bailey supplied Plaintiff with a copy of Frizzell's will, which expressly stated that "Romona" was "not [his] child."  (ECF No. 1-17, PageID.105.)

On December 22, 2020, Plaintiff wrote letters to Bailey and David, requesting that they resolve the dispute between themselves to avoid litigation.  (ECF No. 1-18, PageID.111.)  Bailey and David failed to come to an agreement, and Plaintiff filed an interpleader action in this Court on July 12, 2021.  (*See id.*; ECF No. 1.)  No party answered Plaintiff's complaint and Plaintiff requested an entry of default against Rankin and Bailey, and the Clerk subsequently entered their default.  (*See* ECF Nos. 14–15.)

Plaintiff did not, however, request an entry of default against David Sutherlin.  (ECF No. 16, PageID.136.)  In October 2021, David's sister-in-law contacted Plaintiff's counsel and informed her that she had been appointed by David to handle the matter on his behalf.  (*Id.*)  However, David's sister-in-law is not an attorney and David Sutherlin is currently not represented by counsel.  (*Id.* at PageID.136–37.)

A week after the Clerk of the Court entered Bailey and Rankin's default, Plaintiff moved for this Court to enter a default judgment against both parties.  (ECF No. 16.) Plaintiff also moved for leave to deposit the life insurance proceeds with the Court, to be dismissed from the action with prejudice, and for Defendants to be enjoined from bringing any further action against Plaintiff related to Frizzell's life insurance plan.[2]  (ECF No. 16.) No party has responded Plaintiff's motion and the deadline to respond has passed.

    **B.**    **Analysis**

---

[2] Although not discussed in its motion, Plaintiff's complaint stated that it desired to recover its court costs and attorney's fees.  (ECF No. 1, PageID.9–10.)

### 1. Default Judgment

A default judgment is "[a] judgment entered against a defendant who has failed to plead or otherwise defend against the plaintiff's claim . . . ." *Default Judgment*, Black's Law Dictionary (11th ed. 2019). Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for the court to enter a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once the clerk enters a party's default, any other party may "apply to the court for a default judgment."[3] Fed. R. Civ. P. 55(b)(2); *see Aetna Life Ins. Co. v. Gablow*, No. 09-14049, 2010 WL 4024719, at *2 (E.D. Mich. Oct. 13, 2020). The court may only enter a default judgment "against a minor or an incompetent person" if he or she is "represented by a . . . fiduciary who has appeared" before the court. Fed. R. Civ. P. 55(b)(2). Additionally, under the Servicemembers Civil Relief Act ("SCRA"), the court may not enter a default judgment against an active military servicemember. *Merrill v. Beard*, No. 5:05CV768, 2007 WL 461469, at *3 (N.D. Ohio, Feb. 7, 2007); 50 U.S.C. §§ 3902, 3931 (2012).

The moving party has an affirmative duty to prove to the court that the party against whom they wish to enter a default judgment is a competent adult. *Mason Dixon Lines, Inc. v. Shamrock Management Group, LLC*, No. 1:13-cv-403, 2015 WL 13186242, at *4 (E.D. Tenn. Jan. 12, 2015) (citing *Ross v. Baker*, No. 4:06-cv-111, 2006 U.S. Dist LEXIS 77216

---

[3] A Plaintiff may request that the clerk of the court enter a default judgment "[i]f the plaintiff's claim is for a sum certain" and the plaintiff submits "an affidavit showing the amount due . . . ." Fed. R. Civ. P. 55(b)(1).

at *4 (W.D. Mich. Oct. 23, 2006)). For example, in *Capitol Records, Inc. v. Garcia*, the District of Minnesota held that it could not enter a default judgment against a defendant where the moving party summarily asserted, in an affidavit, that it believed the defendant was "not an infant or an incompetent person." No. 07-CV-1414, 2007 WL 9734958, at *2 (D. Minn. Nov. 7, 2007). Recognizing that default judgments "are not favored by law," the court reasoned that because the "affidavit provide[d] almost no information about" the defendant, the court could not "satisfy[] itself that the defendant [was] a competent adult." *Id.* (internal quotation marks omitted) (quoting *Trustees of the St. Paul Elec. Constr. Indus. Fringe Benefit Funds v. Martens Elec. Co.*, 485 F. Supp.2d 1063, 1064 (D. Minn. 2007)). Indeed, making such a finding based on a moving party's mere assertion would conflict with the great "pain[s]" Rule 55 takes to "protect" minors and incompetent individuals. *Id.*

Similarly, the SCRA requires a plaintiff in any civil action to file an affidavit "stating whether . . . the defendant is in military service. 50 U.S.C. §§ 3902(a)–(b), 3931(b)(1)(A); *In re Templehoff*, 339 B.R. 49, 53 (S.D.N.Y. 2005) (explaining that the SCRA applies to all civil proceedings where a defendant has not made an appearance); *see also Zee Company, Inc. v. Davis*, No. 1:20-cv-00143, 2021 WL 5177778, at *1 (E.D. Tenn. Aug. 27, 2021). The affidavit must contain all facts that are "necessary" to support it. 50 U.S.C. § 3931(b)(1)(A). If, however, the plaintiff cannot determine that the defendant is in military service, then the plaintiff must file an affidavit stating this fact. *Id.* § 3931(b)(1)(B). If the court cannot determine the defendant's military status based on the

5

affidavit, then it may require the plaintiff to file a bond that will "be available to indemnify the defendant against any loss . . . ." *Id.* § 3931(b)(3).

Here, Plaintiff provides no information regarding Rankin's age, competency, or military status. Similarly, although Plaintiff provides a claim form completed by Bailey, stating that she was born in 1939, Plaintiff provides no information about her competency.[4] (ECF No. 1-12, PageID.80.)

First, at least with respect to Rankin, Plaintiff was required by the SCRA to provide the court with an affidavit regarding her military status, but Plaintiff failed to do this. *See* 50 U.S.C. § 3931(b)(1). Accordingly, I suggest that this Court should not enter a default judgment against Rankin. *Cf. U.S. v. Simmons*, 508 F. Supp. 552, 552 (E.D. Tenn. 1980)

Second, the court may not infer that these two defendants are competent adults simply because the record contains no evidence suggesting that these elements may be at issue. At least where a party moves for default judgment, the absence of evidence is not evidence of absence. By inferring that both Defendants are competent adults because the record contains no evidence stating otherwise, the Court would effectively place the burden of proof on the defaulting parties.

Surely, however, Rule 55 was not intended to require the party in default to prove that he or she belongs to a classification that is protected from default judgment. Because

---

[4] To state the obvious, Bailey is not an active military servicemember, and no affidavit is required with respect to her military status. *See United States v. Fitzgerald*, 906 F.3d 437, 447 (6th Cir. 2018) ("[C]ourts should not construe a statute to 'produce an absurd result that we are confident Congress did not intend . . . .'"); *cf. Poparic v. Minka's Grill*, No. 07-04209, 2009 WL 10671025, at *4 n.28 (C.D. Cal. June 25, 2009) ("As a business entity, Minka's Grill is clearly not an infant, incompetent[,] or military servicemember.").

"[d]efault judgments are disfavored," the "legal prerequisites" to enter a default judgment require "strict compliance." *Walton v. Rogers*, No. 88-3307, 1988 WL 109859, at *1 (6th Cir. Oct. 19, 1988) (citing *Varnes v. Local 91, Glass Bottle Blowers Ass'n of the U.S. and Can.*, 674 F.2d 1365, 1369 (11th Cir. 1982)); *see also* 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2681 (4th ed. 2021). Recognizing the harsh nature of default judgments, Rule 55 was structured to protect vulnerable individuals. *See Capitol Records, Inc.*, 2007 WL 9734958, at *2. Yet, if this Court were to enter a default judgment because Plaintiff chose not to provide the court with any evidence that that either defendant was incompetent or a minor, the Court would circumvent these protections.

Indeed, because the moving party has no incentive to provide the court with information that would counsel against an entry of default judgment, it would make little sense to assume that a defendant is a competent adult merely because the Plaintiff provided no evidence to the contrary. Moreover, a defaulting party, particularly one who is incompetent or below the age of majority, often cannot be expected to prove that he or she is protected against a default judgment.[5] *See Blackwell v. Capitol One Bank*, No. 606CV066, 2007 WL 1732192, at *1 (S.D. Ga. June 13, 2007) ("[W]hen a plaintiff brings an action against the incompetent, the [unrepresented] incompetent cannot respond."). Thus, the burden must be on the moving party to make some initial showing that the defaulting party does not belong to some protected classification. *Contra Prudential Ins.*

---

[5] Of course, such an individual could move the court to set aside a default judgment, but the court "cannot enter a default judgment without first satisfying itself that the defendant is a competent adult." *Id.*; *see* Fed. R. Civ. P. 55(c); Wright et al., *supra*, § 2681.

7

*Co. of America v. Amarante*, No. 18-cv-13618, 2019 WL 1397247, at *2 (E.D. Mich. Mar. 28, 2019) (entering default judgment where there was "no indication" that the defendant was not a competent adult).

Like the *Capitol Records* court, I stress that I do not recommend denying Plaintiff's motion for default judgment on a mere technicality. *See Capitol Records, Inc.*, 2007 WL 9734958, at *2. Again, default judgment is an extreme remedy that courts are hesitant to utilize, and both Rule 55 and the SCRA place significant procedural safeguards to protect vulnerable, unaware individuals from default judgment. *See Morrow v. Dept. of Agriculture*, No. 94-3793, 1995 WL 523336, at *3 (6th Cir. Sept. 5, 1995). Yet, the Court has almost no information from which it can determine whether Bailey or Rankin are protected by either law, and each defendant very well could belong to one or more of these classifications. Without this information, the Court cannot meaningfully implement the safeguards imposed by Rule 55 and the SCRA.

Indeed, Bailey is over eighty years old—this alone gives the court reason to call her competency into question. (ECF No. 1-12, PageID.80); *see* Marshall B. Kapp, *Distinctive Factors Affecting the Legal Context of End-of-Life Medical Care for Older Persons*, 33 Ga. St. L. Rev. 869, 872–73 (2017). And all Plaintiff tells the Court about Rankin is that she may be Frizzell's daughter. (ECF No. 1, PageID.2.) Plaintiff alleges that while Rankin was listed as Frizzell's daughter in his obituary, Frizzell's will expressly stated that she was not his daughter, and Defendant David Sutherlin completed an affidavit stating that he was Frizzell's only surviving child. (*Id.* at PageID.7; ECF No. 1-14, PageID.90; ECF No.

8

1-17, PageID.105.) Rankin's age, competency, and military status are completely unknown.[6] Accordingly, I suggest that default judgment not be entered against Bailey or Rankin.

### 2. Interpleader

Interpleader allows an obligor who is potentially liable to multiple claimants to file a lawsuit against each potential claimant, deposit "a sum certain with the Court, and then withdraw from the proceeding," thereby leaving the claimants to litigate amongst themselves. *Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 434 (E.D. Pa. May 19, 2015); *see also U.S. v. High Tech. Products, Inc.*, 497 F.3d 637, 641 (6th Cir. 2007). This allows an admittedly liable party to protect itself from "the vexation of multiple claims." *High Tech. Prods., Inc.*, 497 F.3d at 641 (citing 7 Charles A. Wright et al., Federal Practice and Procedure § 1704 (3d ed. 2001)). A party may invoke interpleader under either Federal Rule of Civil Procedure 22 or 20 U.S.C. § 1335 (2012). *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 355–56 (6th Cir. 2018). An interpleader action under Rule 22 is identical to an interpleader action under § 1335—the two rules differ only in their jurisdictional requirements. *High Tech. Prods., Inc.*, 497 F.3d at 641 n.1.

"An interpleader action typically proceeds in two stages." *Id.* at 641. First, the court must determine whether the plaintiff "has properly invoked interpleader." *Id.* This inquiry

---

[6] Although Plaintiff provides documents establishing that Frizzell was born in 1929, this does little to assist the Court in determining Rankin's age. (ECF No. 1-6, PageID.64; ECF No. 1-12, PageID.81.) Assuming that Rankin is Frizzell's daughter, it would be unlikely for her to be a minor. However, the record contains evidence suggesting that Rankin may not be Frizzell's daughter, and even if she is his daughter, it is also possible that she may not be his biological daughter or that Frizzell conceived her at an old age.

requires the court to consider (1) "whether the court has jurisdiction over the suit," (2) "whether the stakeholder is actually threatened with double or multiple liability," and (3) "whether any equitable concerns prevent the use of interpleader." *Id.* At "the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes . . . ." *Id.* For purposes of this motion, the Court need only consider the first stage.

Here, the Court has jurisdiction over this interpleader action. Where, as here, a plaintiff only invokes interpleader pursuant to Rule 22, the court has jurisdiction if (1) the action raises a federal question or (2) the action meets the requirements for diversity jurisdiction under 28 U.S.C. § 1332 (2012). *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 & n.2 (6th Cir. 1997). Here, the Court has federal question jurisdiction because the suit involves the distribution of a life insurance policy governed by ERISA. *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 277 (3d Cir. 2007); *Metro. Life Ins. Co. v. Mason*, No. 1:08-cv-00322, 2010 WL 1286251, at *1 (W.D. Mich. Feb. 11, 2010) ("Interpleader under Rule 22 of the Federal Rules of Civil Procedure is also appropriate, as independent federal-question jurisdiction exists under ERISA.").

Further, I suggest that Plaintiff is threatened with "multiple liability." *See High Tech. Prods., Inc.*, 497 F.3d at 641 n.1. "The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder . . . is whether the stakeholder legitimately fears multiple vexation directed against a single fund or property." *Id.* (quotation marks omitted) (quoting 7 Wright et al., *supra*, at § 1704). However, when assessing whether the Plaintiff "legitimately fears" liability to multiple claimants, the court

must not "review . . . the merits of the adverse claims" because this inquiry is properly considered only during the "second-stage of interpleader." *Mudd v. Yarbrough*, 786 F. Supp.2d 1236, 1240–41 (E.D. Ky. 2011). Rather, "this requirement [is] satisfied where multiple claimants present competing claims for the same identifiable products." *Id.* at 1241–42 (citing *High Tech. Prods.*, 497 F.3d at 642).

Here, all three Defendants have potential claims against Plaintiff for Frizzell's life insurance proceeds. Indeed, it appears that Frizzell named Bailey as his beneficiary; however, Defendant David Sutherlin contested the legitimacy of her designation as Frizzell's beneficiary, arguing that Frizzell had begun to suffer from dementia at the time he named her. (ECF No. 1, PageID.3, 6–7; ECF No. 1-14, PageID.89–90.) This assertion is supported by medical records attached to Plaintiff's complaint. (ECF No. 1-13, PageID.84.) Further, if Bailey's designation as Frizzell's beneficiary was not valid, then Rankin, who might be Frizzell's daughter, may have a claim against Plaintiff for the Frizzell's life insurance proceeds.[7] (*See* ECF No. 1, PageID.7; ECF No. 1-18, PageID.111.) Accordingly, I suggest that Plaintiff has properly asserted interpleader against the defendants.

"'When the court decides that interpleader is available'—typically, at the conclusion of the first stage—'it may issue an order discharging the stakeholder, if the stakeholder is disinterested, enjoining the parties from prosecuting any other proceeding related to the same subject matter, and directing the claimants to interplead . . . .'" *See High Tech. Prods.*,

---

[7] There are no "equitable concerns" that would "prevent the use of interpleader." *See High Tech. Prods., Inc.*, 497 F.3d at 641.

11

*Inc.*, 497 F.3d at 641 (quoting 7 Wright et al., *supra*, at § 1704). Because Plaintiff has properly invoked interpleader, and because Plaintiff is "disinterested" as to which claimant receives the proceeds from the life insurance policy, I suggest that Plaintiff should be dismissed from this case, and the remaining parties should be enjoined from bringing any claims against Plaintiff to recover the proceeds from Frizzell's life insurance policy. *See Unum Life Ins. Co. of America v. Kelling*, 170 F. Supp.2d 792, 794 (M.D. Tenn. 2001) (defining "disinterested" as having "no interest in which of the competing claimants receive[s] the fund paid into the [c]ourt").

Further, pursuant to Federal Rule of Civil Procedure 67, I suggest that Plaintiff may deposit the contested funds, in the amount of $3,243.96, with the Clerk of the Court. (*See* ECF No. 16, PageID.131–32); *New York Life Ins. Co. v. Scrimger*, No. 2:19-cv-10146, 2020 WL 6075522, at *1, *3 (E.D. Mich. Oct. 14, 2020). The Clerk should deposit these funds into an interest-bearing account until further order of this Court. *See* Fed R. Civ. P. 67(b).

### 3. Attorney's Fees and Costs

Last, I suggest that Plaintiff should not be awarded attorney's fees and costs. Generally, "[a] federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action . . . whenever it is fair and equitable to do so." *Holmes v. Artists Rights Enforcement Corp. (AREC)*, 148 F. App'x 252, 259 (6th Cir. 2005) (quotation marks omitted) (quoting 7 Wright et al., *supra*, at § 1704); *see also Western Life Ins. Co. v. Nanney*, 290 F. Supp. 687, 688 (E.D. Tenn. Aug. 15, 1968) ("Whether the Court should impress this fund to defray the interpleading plaintiff's costs and attorney's fees

12

involves judicial discretion; rarely are they allowed as a matter of course."). Although a court may award attorney's fees to "(1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability," the court must only award fees it finds to be reasonable. *Holmes*, 148 F. App'x at 259.

Most courts decline to award attorney's fees and costs where "a stakeholder's interpleader claim arises out of the normal course of business." *In re Mandalay Shores Coop. Hous. Ass'n Inc.*, 21 F.3d 380, 383–84 (11th Cir. 1994); *see also Allstate Life Ins. Co. v. Shaw*, No. 15-11761, 2016 WL 1640461, *5–6 (E.D. Mich. Apr. 10, 2016) (collecting cases). These courts reason that a stakeholder whose claim "arises out of the normal course of business, such as an insurance company, is better suited to bear the cost of litigation" than an interpleader defendant. *In re Mandalay Shores Coop. Hous. Ass'n Inc.*, 21 F.3d at 383. Claims to insurance proceeds are regularly disputed, and insurance companies frequently "use interpleader as a tool to allocate proceeds and avoid further liability." *Id.* Accordingly, insurance companies can anticipate disputed claims and easily allocate the expected costs of litigation to their customers. *Id.* By contrast, beneficiaries of insurance policies, particularly life insurance policies, often are not privy to the agreement between the insurance company and its customer, and "unwittingly come into possession of a disputed asset." *Id.* Unlike insurance companies, beneficiaries are poorly equipped to "plan for interpleader" actions. *Id.* Thus, it would be unfair to make beneficiaries bear the insurance company's cost of litigation. *Id.* Indeed, this would inhibit

one of the central goals of interpleader actions—to preserve the value of the disputed asset. *Protective Life Ins. Co. v. Patel*, No. 20-13289, 2021 WL 4060989, at *6 (E.D. Mich. Sept. 7, 2021) (citing *Unum Life Ins. Co. of America*, 170 F. Supp.2d at 794–95).

Additionally, many courts have recognized that because insurance companies who initiate interpleader actions do so in their own self-interest to avoid future litigation, this immunity from further lawsuits provides an adequate remedy for insurance companies. *E.g.*, *id.*; *Allstate Life Ins. Co.*, 2016 WL 1640461, at *6.

I find these cases to be persuasive and I suggest that this court should exercise its discretion to deny Plaintiff recovery of its fees and costs.

### C.     Conclusion

For the previously discussed reasons, **I RECOMMEND** that this Court **GRANT IN PART** Plaintiff's motion for default judgment as to Plaintiff's request for leave to deposit funds, and for dismissal with prejudice but **DENIED** as to the request for default judgment against Bailey and Rankin.  (ECF No. 16).

## III.     REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 4, 2022               S/ PATRICIA T. MORRIS
                                    Patricia T. Morris
                                    United States Magistrate Judge